IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MAURICE JACKSON, # R-31861, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 14-cv-720-NJR |
| | ) |
| C/O V. SMITH, | ) |
| C/O BAKER, | ) |
| REBECCA CREASON, | ) |
| SGT. PELKER, | ) |
| C/O MEZZO, | ) |
| LT. EVERSIZER, | ) |
| C/O SPILLER, | ) |
| C/O PHELPS, | ) |
| ROBERT D. GRANT, | ) |
| BRAD THOMAS, | ) |
| and WEXFORD HEALTHCARE, INC., | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter is now before the Court for a merits review of Plaintiff's complaint (Doc. 5), which was filed on July 1, 2014. Plaintiff, Maurice Jackson, is currently incarcerated at Menard Correctional Center ("Menard"), where he is serving a 40-year sentence for murder. On August 14, 2014, this action was dismissed, and the Clerk entered judgment against Plaintiff, based on his failure to prosecute the action and to comply with a court order. The judgment was vacated on September 16, 2014 (Doc. 13), however, after Plaintiff demonstrated that he had attempted to comply with the court's order but was prevented from doing so by events connected to a lockdown at Menard.

Plaintiff claims that he was sexually assaulted by his cellmate on two occasions, and no

officials intervened despite his pleas for help after the first attack. He has since been moved to a different cell (Doc. 5, p. 4).

Specifically, according to the complaint, on April 28, 2014, Plaintiff's cellmate began verbally harassing him. This soon escalated into punching, and Plaintiff defended himself by punching back, hurting his fist in the process (Doc. 5, pp. 5, 10). As the confrontation continued, Plaintiff "realized that he was a victim to a rape attempt, because his celly was grabbing his ass and his genitals, and pulling at his boxers trying to pull them down, and ripping them" (Doc. 5, p. 5). After what seemed like an hour, the cellmate got tired and gave up on his attack.

The next day, Plaintiff wrote to Defendants Thomas (Chief of Internal Affairs) and Creason (Psychiatrist Administrator) asking for help. He hoped to resolve the matter quietly, fearing repercussions from the cellmate, who was a gang member. Adding to his fears was the fact that two Menard inmates had been murdered by their cellmates the previous year. Plaintiff got no response to either letter.

On May 1, 2014, Plaintiff wrote a letter to an unnamed official in Springfield, seeking emergency help. He wrote on the outside of the envelope, "I am a victim to an attempted rape." *Id*. Plaintiff later learned that the letter was not mailed. Instead, Defendant Mezzo placed the envelope back on the cell door where other inmates could see it and asked Plaintiff if it belonged to him (Doc. 5, p. 6).

On May 2, 2014, when Plaintiff was being taken to the doctor for an unrelated matter, he gave Defendant Smith a letter about the incident. Smith showed the letter to a nurse assistant and to Defendant Creason, and then he gave it to Defendant Baker. Plaintiff told Defendant Baker he wanted to report a sexual assault to Defendant Pelker. They then approached Defendant Pelker's desk, and Plaintiff told him, "I want to report a sexual assault." *Id*.

Defendant Pelker just gave Plaintiff a "hideous look," and Defendant Baker made him keep walking on. When they got back to Plaintiff's housing area, Defendant Baker gave the letter to Defendant Mezzo. Nonetheless, Defendant Mezzo made Plaintiff return to the same cell with the dangerous cellmate. None of the other officials took any action to protect Plaintiff.

On May 4, 2014, Plaintiff re-mailed his letter to Springfield. The next day, while Plaintiff was trying to sleep, he felt his cellmate grabbing his buttocks again and grabbing himself. Plaintiff told him to stop and get away, but instead, he continued pulling and ripping Plaintiff's boxers. He also scratched Plaintiff's thigh, and blood from that injury got on Plaintiff's boxers. Plaintiff kept this blood-spotted, torn pair of boxers as evidence (Doc. 5, p. 7).

The next day, May 6, Plaintiff wrote another letter to Defendant Thomas reporting the second sexual assault. He got no response. He wrote to his appellate attorney's office on May 7,[1] and to Erin Carter (of Internal Affairs; she is not a Defendant in this lawsuit) on May 13.

On May 19, 2014, Plaintiff attended a *Pavey* hearing conducted by this Court in *Jackson v. Hoffman, et al.*, Case No. 12-cv-233-MJR-SCW (that case was later dismissed). During this proceeding, Plaintiff gave another letter reporting both assaults to Officer Rednour (also not named as a Defendant). C/O Rednour in turn took the letter to Defendant Eversizer, but his complaint was ignored.

On May 25, 2014, after finally receiving two grievance forms, Plaintiff filed a third emergency grievance to the Warden, which he learned was received by her on May 29. Plaintiff also wrote another letter to Defendant Creason, but she still failed to take action. As a result of the emergency grievance, the Warden had Plaintiff moved to a different cell. According to

---

[1] Plaintiff later got a response from his attorney telling him to call the IDOC hotline; he wrote back and waived confidentiality with his attorney to allow her to report or discuss his situation with state officials (Doc. 5, p. 8). His attorney contacted him on June 19 to confirm his information, and she promised to call the hotline for him (Doc. 5, p. 9).

Plaintiff's calculations, he spent 31 days with the dangerous cellmate after he was "victimized twice" (Doc. 5, p. 8).

After Plaintiff was separated from the cellmate, he was questioned by Defendants Spiller and Phelps about the incidents. Accordingly to Plaintiff, however, they refused to do any investigation or inspect the evidence. Plaintiff was then placed in a suicide watch cell and "stripped of his property." *Id*. He was later moved to a regular cell after he attended a deposition on May 30.

Plaintiff further complains that he wrote to Defendant Grant (an FBI agent), but his letter was not mailed due to insufficient funds. He believes that under prison rules, the letter should have been mailed anyway because he is entitled to send reasonable amounts of "legal mail" at prison expense (Doc. 5, pp. 8-9). He made other attempts to file criminal charges, but nothing was done.

Plaintiff believes that he continues to be in great danger at Menard even after being moved, because on June 19, 2014, Defendant Mezzo threatened him that he had better "drop the shit" (meaning the lawsuit)[2] or he would suffer more than before (Doc. 5, p. 9). Plaintiff did not know what incident of suffering Defendant Mezzo was referring to, because there have been many situations where prison staff have placed him in danger.

Plaintiff requests injunctive relief to address defects in the prison grievance and sexual assault reporting procedures, and in staff training, as well as in the screening process for making cell assignments (Doc. 5, p. 10). He also seeks compensatory and punitive damages. He asks

---

[2] It is not clear which lawsuit Defendant Mezzo may have pressured Plaintiff to drop; at the time of this comment, Plaintiff had six lawsuits pending in this district against a number of Menard correctional officers and other staff. Defendant Mezzo was not named as a party in any of them; however, in an action Plaintiff filed on May 5, 2014, *Jackson v. Dowdy, et al.*, Case No. 14-cv-511-JPG, he included allegations that guards had failed to protect him from the cellmate who sexually assaulted him (Doc. 1 in Case No. 14-cv-511). Plaintiff did not properly bring those allegations before the Court until he filed the instant complaint.

again that criminal charges be brought against the former cellmate who assaulted him and against the Defendants named in this case.

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has articulated a colorable Eighth Amendment claim against Defendants Thomas, Smith, Creason, Baker, Pelker, Mezzo, and Eversizer for deliberate indifference to his physical safety, specifically, for their failure to take any action to protect him from the second attempted sexual assault on May 5, 2014 (**Count 1**). In addition, Plaintiff states a retaliation claim against Defendant Mezzo (**Count 2**) for threatening Plaintiff with harm if he did not cease his litigation activity. These claims shall proceed for further review.

Plaintiff's remaining claims, however, will be dismissed for failure to state a constitutional claim upon which relief may be granted. These include the claim against Defendants Spiller, Phelps, and Grant for failing to investigate the incidents or take punitive action against those involved (**Count 3**); the claim against Defendant Wexford Healthcare, Inc. based on Defendant Creason's failure to protect Plaintiff (**Count 4**); and the failure to mail Plaintiff's letter to FBI Agent Defendant Grant (**Count 5**).

**Count 1 – Failure to Protect**

In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (internal citations omitted); *see also Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006).

However, not every harm caused by another inmate translates into constitutional liability for the corrections officers responsible for the prisoner's safety. *Farmer*, 511 U.S. at 834. In order for a plaintiff to succeed on a claim for failure to protect, he must show that he is incarcerated under conditions posing a substantial risk of serious harm and that the defendants acted with "deliberate indifference" to that danger. *Id.*; *Pinkston*, 440 F.3d at 889. A plaintiff also must prove that prison officials were aware of a specific, impending, and substantial threat to his safety, often by showing that he complained to prison officials about a *specific* threat to his safety. *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). In other words, Defendants had to know that there was a substantial risk that those who attacked Plaintiff would do so, yet failed to take any action. *See Sanville v. McCaughtry*, 266 F.3d 724, 733-34 (7th Cir. 2001). Notably, conduct that amounts to negligence or inadvertence is not enough to state a claim. *Pinkston*, 440 F.3d at 889 (discussing *Watts v. Laurent*, 774 F.2d 168, 172 (7th Cir. 1985)).

Plaintiff's complaint satisfies the pleading requirements for a deliberate indifference claim against Defendants Thomas, Smith, Creason, Baker, Pelker, Mezzo, and Eversizer in connection with the second (May 5) assault on Plaintiff by his cellmate, because each of them was made aware of the threat to Plaintiff's safety before that incident occurred. There can be no liability for the *first* attack (on April 28), however, because by Plaintiff's own account, this assault was unforeseen. He did not request protection from the cellmate until after that first assault. Therefore, none of the Defendants can be found to have been deliberately indifferent to Plaintiff's safety until after Plaintiff complained and sought help the day after the initial incident.

**Count 2 – Retaliation**

Defendant Mezzo was one of the guards who Plaintiff asked for help in reporting his cellmate's sexual assault, and he handled two of Plaintiff's letters seeking protection from the

cellmate. Instead of assisting Plaintiff, on May 1, 2014, Defendant Mezzo placed the envelope stating "I am a victim to an attempted rape" where other prisoners could see it. The next day, he made Plaintiff return to the cell with his assailant. Finally, some two weeks after Plaintiff was moved to a new cell, he threatened Plaintiff that he would face worse suffering if he did not drop his lawsuit. This threat was made while Plaintiff was waiting in the holding cage for a call from his attorney on another case.

A claim for retaliation may be stated when a prison official threatens an inmate with physical harm in retaliation for exercising his constitutionally protected right to pursue grievances or lawsuits. "Threats [of physical harm] are an entirely different matter than insults, or verbally explicit remarks." *Johnson v. Collins*, Case No. 05-cv-140-WDS-DGW, 2007 WL 2274674, at *6 (S.D. Ill. Aug. 6, 2007) (inmate's retaliation claim should not be dismissed where defendants threatened to put him back in the cellblock with an inmate who had beaten him, if he filed a complaint over their failure to protect him from the attack) (discussing *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000), which held that "standing alone, simple verbal harassment" does not violate the Constitution). In light of Defendant Mezzo's earlier role in returning Plaintiff to a dangerous cell and failing to protect him, at this early stage, Plaintiff may proceed with a retaliation claim in Count 2 against Defendant Mezzo for threatening him with physical suffering if he continued to pursue his litigation activity.

**Dismissal of Count 3 – Failure to Investigate**

Plaintiff does not allege that he notified Defendants Spiller or Phelps (Internal Affairs Officers) of his fears for his safety, sought their protection, or had any contact with them whatsoever until he was finally removed from the dangerous cellmate. Likewise, if Plaintiff's letter to Defendant Grant eventually reached him, it would have been after Plaintiff had already

been separated from the cellmate. He states that he "tried remailing" the letter to Defendant Grant on May 30, the same night he was moved following his deposition (Doc. 5, p. 8). Plaintiff states that the letter to Defendant Grant asked him to file criminal charges against the Defendants in this case. *Id*.

Based on the facts alleged, none of these three Defendants had any advance warning of Plaintiff's need for protection, and he did not ask them to remove him from his dangerous situation. His claims against them thus boil down to dissatisfaction with their failure to investigate the assaults after the fact, and/or failure to pursue criminal charges against prison officials. This does not raise any constitutional claim.

As the Court explained to Plaintiff in the initial order in this case (Doc. 3), he does not have the right to initiate criminal charges against any other person. Only the appropriate federal or state prosecutor may do so. Further, a decision of any official to decline to pursue criminal charges does not violate Plaintiff's constitutional rights. Criminal statutes do not provide for private civil causes of action. *See generally Diamond v. Charles*, 476 U.S. 54, 64-65 (1986) (holding that private citizens cannot compel enforcement of criminal law).

Just as a prisoner cannot bring a constitutional claim against officials who mishandle his grievances over conditions of confinement, the failure to investigate a prisoner's complaints does not violate the Constitution. Defendants Spiller, Phelps, and Grant may have had a responsibility to look into Plaintiff's allegations of misconduct by the other prison officials. Nonetheless, they clearly "did not cause or participate in the underlying conduct" of the other Defendants who allegedly failed to protect Plaintiff. *See Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011); *see also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Because

these Defendants had no personal involvement in the events giving rise to Plaintiff's claim in Count 1, their failure to investigate his complaints after the fact will not support an independent constitutional claim. Defendants Spiller, Phelps, and Grant (as well as Count 3) shall be dismissed from the action with prejudice.

**Dismissal of Count 4 – Wexford Healthcare, Inc.**

Plaintiff includes no specific allegations of wrongdoing on the part of this corporate Defendant, which presumably employs Defendant Creason as a mental health provider for Menard inmates. But Defendant Wexford Healthcare, Inc. ("Wexford") cannot be held liable solely on the basis that it employed or supervised an individual who may have been deliberately indifferent to a prisoner's safety or health.

A corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the alleged violation of a constitutional right. *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). *See also Jackson v. Ill. Medi-Car, Inc.,* 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a § 1983 action). Plaintiff makes no allegation that any individual Defendant acted or failed to act as a result of an official policy espoused by Defendant Wexford. Accordingly, Defendant Wexford (and Count 4) shall be dismissed from the action without prejudice.

**Dismissal of Count 5 – Outgoing "Legal Mail"**

Plaintiff complains that his outgoing letter to Defendant Grant should have been mailed, according to prison policy, even if he had insufficient funds to cover the postage costs. It is true that prisoners have the right to send letters to certain recipients even if they lack funds, and they will be charged for the postage later when and if they receive money to cover the cost. However, this policy applies only to a short list of correspondents.

Prison administrative regulations define what constitutes "privileged mail" and "legal mail" sent by inmates. ILL. ADMIN. CODE tit. 20, § 525.110 (2014). Prisoners must pay for their own postage on "privileged mail" and non-privileged (regular) mail. Only "legal mail" and certain other correspondence may be mailed at state expense if an inmate does not have sufficient funds. ILL. ADMIN. CODE tit. 20, § 525.130(a).[3] "Legal mail" includes mail to registered attorneys, state's attorneys, the Illinois Attorney General, judges, or any organization that provides direct legal representation to offenders. ILL. ADMIN. CODE tit. 20, § 525.110(h). Under these regulations, an FBI agent is not on the list of addressees for which a prisoner can "charge" the postage to the prison. Therefore, the official who returned the letter addressed to Defendant Grant for insufficient funds was acting properly within the prison rules, because that letter was not "legal mail," and it did not fall under any of the other categories where postage will be paid by the state. § 525.130(a).

Furthermore, the failure to send Plaintiff's letter did not violate any constitutional right. A constitutional claim may arise only if the mishandling of legal mail results in a denial of access to the courts. *See Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999). The complaint does not remotely suggest that this occurred. For these reasons, Count 5 shall be dismissed with prejudice.

**Disposition**

**COUNTS 3 and 5** are **DISMISSED** with prejudice, and **COUNT 4** is **DISMISSED** without prejudice, all for failure to state a claim upon which relief may be granted. Defendants **GRANT, SPILLER,** and **PHELPS** are **DISMISSED** from this action with prejudice.

---

[3] This section provides that inmates may send "legal mail and mail to clerks of any court or the Illinois Court of Claims, to certified court reporters, to the Administrative Review Board, and to the Prisoner Review Board at State expense if they attach signed money vouchers authorizing deductions of future funds to cover the cost of the postage." § 525.130(a).

Defendant **WEXFORD HEALTHCARE, INC.** is **DISMISSED** from this action without prejudice.

As to **COUNTS 1 and 2**, The Clerk of Court shall prepare for Defendants **SMITH, BAKER, CREASON, PELKER, MEZZO, EVERSIZER,** and **THOMAS**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will

cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: September 26, 2014**

_____
NANCY J. ROSENSTENGEL
United States District Judge